SUNDERLAND PROPERTIES, INC., Hereford Investment Corporation, and All Those Who Purchased Real Property Within the County of Berks, Commonwealth of Pennsylvania and Who Incurred Tax Liability Upon Assessments on Such Property Which Assessment Was Increased According to the Purchase Price of Such Property or as a Result of the Purchase of Such Property Since January 1, 1987, A Class

v.

COUNTY OF BERKS, PENNSYLVANIA, the Berks County Board for the Assessment and Revision of Taxes, a/k/a the Board of Assessment of the County of Berks; the Berks County Board of Commissioners; Anthony J. Carabello, Michael F. Feeney, Glenn B. Reber, Donald J. Bagenstose and Vernon K. Shaffer, In Their Official Capacities, only, as Commissioners of the County of Berks; Paul W. Geiger, Donna J. Steward, William J. Schafer, Albert M. Shuman and Minnie Bertolet, In Their Official Capacities, only, as Members of the Berks Board For the Assessment and Revision of Taxes; the Chief Assessor of Berks County; and Clarence G. Hess, In His Official Capacity, only, as Chief Assessor of the County of Berks.

Civ. A. No. 89–5684.

United States District Court,
E.D. Pennsylvania.

Oct. 19, 1990.

---

William P. Barnett, Reading, Pa., for plaintiffs.

Daniel B. Huyett, Reading, Pa., for defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

The defendants in the captioned matter have filed a motion to dismiss for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1).[1] The defendants argue that the court should dismiss the plaintiffs' complaint with prejudice because of the Tax Injunction Act of 1937, because of the doctrine of comity, and because various doctrines of abstention should apply. A hearing on the defendants' motion was held by the court in Easton, Pennsylvania on August 31, 1990. After reading the motions and briefs of the parties and after listening to oral argument on the motion, we believe that the defendants' motion to dismiss should be granted for the reasons expressed below.

On August 2, 1989, the plaintiffs, who are the owners of real estate in Berks

---

1. Fed.R.Civ.P. 12(b)(1) reads: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, ..."

County, Pennsylvania, filed a civil rights action, pursuant to 42 U.S.C. § 1983, against fourteen defendants, who are public officials of Berks County and government units of Berks County. The plaintiffs complain about the reassessment of their real estate by the Berks County Board of Assessment Appeals for real estate tax purposes. They allege that the defendants have violated their constitutional rights of equal protection and due process under the Fourteenth Amendment of the United States Constitution because they, as recent purchasers of Berks County real estate, have been subjected to higher real estate assessments than others who are similarly situated.

For relief, the plaintiffs demand that the defendants monetarily compensate them because of the alleged unequal treatment of their property assessments. They had also asked for injunctive relief and had sought to have this court order the defendants to cause a county-wide reassessment of all real property subject to taxation in Berks County. At the hearing held before the court on August 31, 1990, however, the parties stipulated to the dismissal of the injunctive relief requested by the plaintiffs, because Berks County, pursuant to a Consent Order in the Berks County Court of Common Pleas, has agreed to reassess real property. This court approved the stipulation of dismissal and only the plaintiffs' requests for damages are currently pending before this court.

The plaintiffs admit that they have undertaken the appropriate Pennsylvania statutory procedure to appeal the reassessment of their properties. They concede that they appealed their reassessments to the Berks County Board of Assessment Appeals. (Complaint, ¶ 39). They admit that, following the denial of their appeals by the Board, they have appealed the Board's decision to the Court of Common Pleas of Berks County pursuant to the County Assessment Code. (Complaint, ¶ 40). These appeals are presently pending before the Berks County Court of Common Pleas.

The plaintiffs also admit that they have already raised defendants' alleged federal constitutional violations during their appeal before the Berks County Board of Assessment Appeals (Complaint, ¶ 49). They have also sought, by way of a Motion in Limine in the Berks County Court of Common Pleas, to raise federal constitutional claims before the Berks County Court of Common Pleas in their assessment appeal litigation. The motion is attached to plaintiffs' complaint as Exhibit C. This motion was granted [2] by the Berks County Court of Common Pleas on December 11, 1989.

Despite their resort to Pennsylvania statutory procedures, the plaintiffs have filed the instant suit under 42 U.S.C. § 1983. The defendants argue that both federal statute and United States Supreme Court precedent require this court to dismiss the complaint for lack of jurisdiction because a remedy exists in the courts of Pennsylvania where the plaintiffs may have their constitutional concerns adequately addressed.

The federal statute upon which the defendants rely is the Tax Injunction Act of 1937, 28 U.S.C.A. § 1341 (West 1976), which reads: "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." In *California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982), the United States Supreme Court opined that, not only did this statute prohibit a federal district court from issuing an injunction enjoining

---

**2.** While this information was not initially a part of the plaintiffs' complaint, the plaintiffs have, by letter dated December 29, 1989, advised the court of this development. By so advising the court, the plaintiffs have, in effect, amended the allegations in their complaint to reflect accurately the present state of the record before the Court of Common Pleas of Berks County.

Moreover, this court can take judicial notice of the Berks County Court of Common Pleas' order granting the Motion in Limine. Fed.R.Evid. 201; *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169 (10th Cir.1979) (citing *United States ex rel. Geister v. Walters*, 510 F.2d 887 (3d Cir. 1975)).

the collection of state taxes, but it also prohibited a district court from issuing a declaratory judgement declaring state tax laws to be unconstitutional. Since, however, the parties in the instant case have stipulated that the plaintiffs' request for equitable relief, which would "enjoin, suspend or restrain", is dismissed and since no request for declaratory relief has been made, we must look further for authority on the issue of damages and the propriety of federal court intervention in a state's system of tax collection.

We find such authority in another United States Supreme Court case, *Fair Assessment in Real Estate Association, Inc. v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). In *McNary*, the Court was faced with deciding whether damages could be awarded in an action filed by state taxpayers against various county officials under 42 U.S.C. § 1983. The Court expressly held that these taxpayers could not assert such a § 1983 action because of the doctrine of "comity". As defined by the Court in *McNary*, "comity" means " 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways....' " *Id.* at 112, 102 S.Ct. at 184 (quoting *Younger v. Harris*, 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 [1971]). The holding in *McNary* was clear. The Supreme Court stated:

> [W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts. Such taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and complete, and may ultimately seek review of the state decisions in this Court. See *Huffman v.*

*Pursue, Inc.*, 420 U.S. [592], at 605, 95 S.Ct. [1200], at 1208–1209 [43 L.Ed.2d 482 (1975) ]; *Matthews v. Rodgers, supra*, 284 U.S. [521], at 526, 52 S.Ct. [217], at 220 [76 L.Ed. 447 (1932) ].

*Id.* at 116, 102 S.Ct. at 186 (footnote omitted).

The Supreme Court, finding that comity would bar federal courts from granting damages relief in such § 1983 cases, refrained from deciding whether the Tax Injunction Act, 28 U.S.C. § 1341, standing alone, would require the same result. *Id.* at 107, 102 S.Ct. at 181.

 Thus, it would seem that the principle of comity would bar the plaintiffs' action under 42 U.S.C. § 1983 in the instant case, as long as Pennsylvania's remedy is found to be "plain, adequate and complete." [3] A plaintiff's state remedy is plain, speedy and efficient if it provides the taxpayer with a full hearing and judicial determination at which the taxpayer may raise federal constitutional objections. *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 514, 101 S.Ct. 1221, 1229, 67 L.Ed.2d 464 (1981). This plain, speedy and efficient remedy exception, however, must be construed narrowly. *Grace Brethren Church*, 457 U.S. at 413, 102 S.Ct. at 2510. The state remedy that will suffice need only be adequate, and it need not be coextensive with the remedies available in federal court. *Sipe v. Amerada Hess Corp.*, 689 F.2d 396, 407 (3d Cir.1982). In other words, the state remedy that will meet the requirement of plain, speedy and efficient need not be the best or most convenient one. *Long v. Kistler*, 524 F.Supp. 225, 227 (E.D.Pa.1981).

 The plaintiffs contend, however, that no such remedy is afforded them under Pennsylvania law. The plaintiffs argue that Berks County, a county of the third class, comes within the ambit of Pa.Stat. Ann. tit. 72 §§ 5342 *et seq.* (Purdon Supp. 1990), which pertains to "Assessments in

---

**3.** The United States Supreme Court in *McNary*, 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8, discerned no difference, for purposes of the principles in that case, between remedies that are "plain, adequate and complete" and those which are "plain, speedy and efficient" within the meaning of the Tax Injunction Act, 28 U.S.C. § 1341.

Counties of the Second Class A and Third Class" (hereinafter "Third Class County Assessment Law"). Although they have already raised constitutional issues before the Board of Assessment, the plaintiffs maintain in this court that appeals to the Board of Assessment are controlled by Pa. Stat.Ann. tit. 72 § 5349(d.1) and (d.2).[4] Such section, plaintiffs say, limits the board to only making determinations of the common level ratio and the market value as of the date of appeal to the board. The plaintiffs argue that the statute does not allow any consideration of constitutional issues based upon equitable and fair adjustment of the assessment. Notwithstanding the December 11, 1989 Order of the Berks County Court of Common Pleas, the plaintiffs likewise insist in this case that Pa. Stat.Ann. tit. 72 § 5350,[5] which deals with taxpayers' appeals to state court, limits that forum to only making the application of the common level ratio to the current market value of the property and does not permit the raising of constitutional claims.

We have examined the sections of the statute to which the plaintiffs have referred. There is no express prohibition anywhere therein against the raising of any constitutional issues. As noted, the plaintiffs have already raised such issues before the Board of Assessment (Complaint, ¶ 49) and the Berks County Court of Common Pleas. We cannot accept the plaintiffs' argument that in prescribing the procedures to be used in appealing the assessment of real property that the legislature intended to prevent constitutional challenges and create in their place only a set of narrowly limited and "exclusive" issues capable of being raised in the state system.

Moreover, we note that Pa.Stat.Ann. tit. 72 § 5020–518.1 (Purdon Supp.1990), which forms part of the General County Assessment Law, appears to give the state courts broad powers. Subsection (a) of § 5020–518.1 reads, in pertinent part:

Any owner of real estate or taxable property in this Commonwealth, who may feel aggrieved by the last or any future assessment or valuation of his real estate or taxable property, may appeal from the decision of the county commissioners, acting as a board of revision, or the predetermined ratio to such value unless the common level ratio varies by more than fifteen percent from the established predetermined ratio, in which case the court shall apply the common level ratio to the current market value of the property for the tax year in question.

(a.2) Nothing herein shall prevent any appellant from appealing any base year valuation without reference to ratio.

(b) In any appeal by a taxable from an action by the board, the board shall have the power and duty to present a prima facie case in support of its assessment, to cross-examine the taxable's witnesses, to discredit or impeach any evidence presented by the taxable, to prosecute or defend an appeal in any appellate court, and to take any other necessary steps to defend its valuation and assessment.

(c) If a taxpayer has filed an appeal from an assessment, so long as the appeal is pending before the board or before a court on appeal from the determination of the board, as provided by statute, the appeal will also be taken as an appeal by the taxpayer on the subject property for any valuation for any assessment subsequent to the filing of such appeal with the board and prior to the determination of the appeal by the board or the court. This provision shall be applicable to all pending appeals as well as future appeals.

---

4. Pa.Stat.Ann. tit. 72 § 5349(d.1) and (d.2) read as follows:

In any appeal of an assessment the board shall make the following determinations:
(1) The market value as of the date such appeal was filed before the board.
(2) The common level ratio published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year on appeal before the board.
(d.2) The board, after determining the market value of the property, shall then apply the established predetermined ratio to such value unless the common level ratio published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year on appeal before the board varies by more than fifteen percent from the established predetermined ratio, in which case the board shall apply that same common level ratio to the market value of the property.

5. Pa.Stat.Ann. tit. 72 § 5350 reads:

(a) In any appeal of an assessment the court shall make the following determinations:
(1) The current market value for the tax year in question.
(2) The common level ratio.
(a.1) The court, after determining the current market value of the property for the tax year in question, shall then apply the established

board of revision of taxes, or the board for the assessment and revision of taxes, or the Board of Property Assessment, Appeals and Review, in counties of the second class, as the case may be, to the court and, thereupon, the court shall proceed, at the earliest convenient time to be by them appointed, of which notice shall be given to the county commissioners, acting as a board of revision, or the board of revision of taxes, or the board for the assessment and revision of taxes, or the Board of Property Assessment, Appeals and Review, in counties of the second class, as the case may be, to hear the said appeal and the proofs in the case and to make such orders and decrees touching the matter complained of as to the judges of said court may seem just and equitable having due regard to the valuation and assessment made of other real estate in such county or city,....

The General County Assessment Law, Pa.Stat.Ann. tit. 72 §§ 5020–101 *et seq.* (Purdon 1950 & Supp.1990), contains provisions pertaining to its relationship with other statutes. Pa.Stat.Ann. tit. 72 § 5020–103(2) reads: "This act does not include any provisions, and shall not be construed to repeal: ... (2) Except where specifically referred to in this act, the laws relating to boards of revision of taxes, or boards for the assessment and revision of taxes, in counties of the first, second and third classes; ..." Pa.Stat.Ann. tit. 72 § 5020–105 reads, in pertinent part:

> Whenever the provisions of this act are inconsistent with any law relating to or administered by any board of revision of taxes, or board for the assessment and revision of taxes, in counties of the first, second or third class, the laws relating to and administered by such boards, and not included in this act, shall apply, and the inconsistent provisions of this act shall not apply to such classes of counties, but shall be in full force as to all other classes of counties, except as affected by local laws.

It is clear that the General County Assessment Law is not meant to repeal the law pertaining to the Third Class County Assessment Law, nor is it meant to apply if any of its provisions are "inconsistent" with that statute.

One recent Pennsylvania case which has considered the relationship between the General County Assessment Law and the Third Class County Assessment Law is *Truck Terminal Motels of America, Inc. v. Berks County Board of Assessment Appeals,* 127 Pa.Cmwlth. 408, 561 A.2d 1305 (1989). In *Truck Terminal,* the issues were whether the School District could appeal a particular taxpayer's reduced assessment if the School District had refused to intervene before the court of common pleas and whether the common pleas court had erred in resolving an assessment appeal on the basis of a stipulation without an evidentiary hearing. The Commonwealth Court found that the School District was permitted to intervene on the basis of legal authority which included the Third Class County Assessment Law. To decide the issue regarding the necessity of a hearing, however, the Commonwealth Court had to look beyond the Third Class County Assessment Law to the General County Assessment Law, specifically, to Pa.Stat.Ann. tit. 72 § 5020–518.1. The Commonwealth Court stated:

> The [Berks County] Board [of Assessment] and the taxpayer first argue that this provision of the General County Assessment Law does not apply in this case. It is true that the Third Class County Assessment Law has no comparable provision requiring a hearing. However, both of those laws apply except where the Third Class County Assessment Law is *inconsistent* with the provisions of the General County Assessment Law. 72 P.S. § 5020–105; *Cf. McKinney v. Board of Commissioners of Allegheny County,* 35 Pa.Commonwealth Ct. 91, 385 A.2d 596 (1978) (construing the relationship between the Second Class County Assessment Law and the General County Assessment Law). Because the Third Class County Assessment Law provides nothing in this regard, we find no inconsistency; rather, we believe that Section 518.1 of the General County Assessment Law supple-

ments the specific law in this regard. We, therefore, believe that Section 518.1 is applicable.

*Id.* 561 A.2d at 1307–1308 (emphasis in original).

In the case at bar, we similarly find no inconsistency between the Third Class County Assessment Law, 72 Pa.Stat.Ann. § 5350, and the General County Assessment Law, 72 Pa.Stat.Ann. § 5020–518.1. We believe that § 5020–518.1 supplements § 5350. The General County Assessment Law will permit the Berks County Court of Common Pleas to "make such orders and decrees touching the matter complained of as to the judges of said court may seem just and equitable having due regard to the valuation and assessment made of other real estate in such county...." Thus, the common pleas court would be free to consider whatever constitutional issues the plaintiffs would wish to bring up. Numerous Pennsylvania decisions stand for the proposition that a taxpayer can challenge the constitutional application of real estate taxes during the property assessment appeal procedure before the Board of Assessment Appeals, and then appeal to the Court of Common Pleas. *Rochester & Pittsburgh Coal Company v. Indiana County Board of Assessment,* 438 Pa. 506, 266 A.2d 78 (1970); *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 240, 209 A.2d 389, 392 (1965); *Consolidated Gas Supply Corporation v. County of Clinton,* 80 Pa.Commw. 10, 470 A.2d 1113 (1984); *Concerned Taxpayers of Beaver County v. Beaver County Board of Assessment Appeals,* 75 Pa.Commw. 443, 462 A.2d 347 (1983). For the above reasons, we believe that the courts of Pennsylvania will afford the plaintiffs a plain, adequate, and complete remedy.

Finally, in their arguments before the court, the plaintiffs have offered two recent United States Supreme Court cases for the proposition that the Supreme Court has authorized federal courts to intervene directly in state systems of taxation: *Allegheny Pittsburgh Coal Co. v. County Commission of Webster County, West Virginia,* 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) and *Missouri v. Jenkins,* —— U.S. ——, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990). We find both cases inapposite to the case at bar. In *Webster County,* the petitioners in that tax assessment case *had* pursued their state remedies through the state court appeals process all the way up to the West Virginia Supreme Court. Their claims of constitutional violations did not reach the Supreme Court of the United States until the state procedures had been exhausted. In *Jenkins,* the Supreme Court was asked to review an order of a federal court that a local government levy higher taxes to fund a school desegregation plan. What the Supreme Court said, in *Jenkins,* was this:

It is therefore clear that a local government with taxing authority may be ordered to levy taxes in excess of the limit set by state statute, where there is reason based in the Constitution for not observing the statutory limitation.... Here the KCMSD may be ordered to levy taxes despite the statutory limitations on its authority in order to compel the discharge of an obligation imposed on KCMSD by the Fourteenth Amendment.

*Id.* 110 S.Ct. at 1666.

The instant case is not one in which the plaintiffs have exhausted their state remedies, nor is it one which calls upon a court to redress a constitutional violation buttressed by a local scheme of limited taxation. *Webster* and *Jenkins,* therefore, have no bearing on our decision in the case at bar.

 In proposing various forms of relief available to the court, the defendants have argued, in the alternative, that, should the court not dismiss the plaintiffs' complaint, it should abstain according to the three well-known doctrines of abstention: *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[6] Plaintiffs oppose abstention, arguing that this

---

6. Abstention is a doctrine, created by the courts, through which federal courts decline to exercise

case does not fit within any of the three types. We agree. We have before us a Motion to Dismiss for Lack of Jurisdiction under Fed.R.Civ.P. 12(b)(1) and the strong pronouncements of *McNary* dictate that we not hear matters such as this when state courts provide a plain, adequate and complete remedy. Accordingly, we should not abstain, but should grant defendants' motion and dismiss.

An appropriate Order follows.

## ORDER

AND NOW, this 19th day of October, 1990, upon consideration of the defendants' motion to dismiss for lack of jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and upon consideration of the plaintiffs' response thereto, it is ORDERED that the plaintiffs' request for injunctive relief is hereby DISMISSED by stipulation of counsel made in open court and that the plaintiffs' complaint is hereby DISMISSED with prejudice.

their jurisdiction in order to prevent needless friction between the federal and state governments. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959). There are three general types of abstention. First, there is *Younger* abstention under which a federal court will abstain from hearing a case when there is a pending state court action. *Younger*, 401 U.S. 37, 91 S.Ct. 746. Second, there is *Pullman* abstention under which a federal court will abstain when there is an unsettled question of state law, the disposition of which may obviate the need to reach a federal constitutional question. *Pullman*, 312 U.S. 496, 61 S.Ct. 643. Third, there is *Burford* abstention under which a federal court may abstain in order to avoid deciding an issue which would interfere with a state's attempt to establish or maintain a coherent state policy with respect to a matter of important state concern. *Burford*, 319 U.S. 315, 63 S.Ct. 1098.