601 A.2d 1352

**GREENWICH TOWNSHIP et al., Appellants,**

v.

**Merry J. MURTAGH et al., Appellees.**

**BOROUGH OF WYOMISSING HILLS, Borough of Birdsboro, Borough of West Reading et al., Appellants,**

v.

**Merry J. MURTAGH, Spencer Lee Cherashore, Frederick Murtagh et al., Appellees.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 1991.

Decided Jan. 9, 1992.

David M. Kozloff, for appellants, Greenwich Tp. et al.

Donald E. Wieand, Jr., for appellants, Borough of Wyomissing Hills, Borough of Birdsboro, Borough of West Reading, et al.

Daniel B. Huyett, E. Thomas Henefer, Joseph C. Mossop and Robert A. Swift, for appellees, Merry J. Murtagh et al.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

PELLEGRINI, Judge.

Greenwich Township, et al. and Borough of Wyomissing Hills, et al. (Local Governments) appeal an order of the Court of Common Pleas of Berks County, finding that the trial court has subject matter jurisdiction to a class action Section 1983 amended complaint of Merry J. Murtagh, et al. (Taxpayers), challenging the constitutionality of the manner in which property is assessed for real estate tax purposes.

Taxpayers, representing a class of recent purchasers of real property in Berks County, filed a complaint against the County of Berks (County) and the Berks County Board of Assessment Appeals (Board), alleging that they had adopted a so-called "Welcome Stranger" policy. Taxpayers alleged that under that policy, recently purchased properties were re-assessed at fair market value, resulting in significantly higher tax assessments than those on other comparable longer-held neighboring properties which were not re-assessed under the practice. Taxpayers alleged that the County and the Board's practice violated their equal protection rights under the Fourteenth Amendment,[1] and, because the re-assessments were done under color of state law, there was a violation of 42 U.S.C. § 1983.

The County and the Board filed a number of preliminary objections to Taxpayers' complaint, only one of which the trial court sustained finding that Taxpayers had failed to sue the local governments who levied taxes which were indispensable parties. As a result, Taxpayers filed an amended complaint joining all taxing authorities in the County, nearly 100 cities, boroughs, townships and school districts. Many of the newly joined local government de-

---

1. Taxpayers rely principally on *Allegheny Pittsburgh Coal Company v. County Commissioner of Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989), where the Supreme Court overturned a West Virginia Supreme Court decision, and held that this type of "Welcome Stranger" policy violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

fendants again filed preliminary objections to the amended complaint based upon lack of subject matter jurisdiction. The trial court dismissed both sets of preliminary objections, but certified the issue for appeal pursuant to Pa. R.A.P. § 1311(b).[2] Subsequently, this court granted separate petitions for permission to appeal an interlocutory order filed by Local Governments and consolidated the appeals.

Local Governments contend, as they did before the trial court, that municipalities and school districts are not proper parties to the action, because they do not have the power or authority to set policy concerning property assessments. Moreover, they now contend that the trial court does not have subject matter jurisdiction over a Section 1983 action challenging a county's tax assessment procedure because a Section 1983 action challenging a state tax scheme and seeking monetary damages is not maintainable in a state court where taxpayers have a plain, adequate and complete state remedy. Pointing out that an identical Section 1983 action challenging the County's "Welcome Strangers" policy was dismissed by a federal district court in *Sunderland Properties, Inc. v. County of Berks*, 750 F.Supp. 704 (E.D.Pa.1990) based upon comity and the Tax Injunction Act of 1937, 28 U.S.C. § 1341,[3] Local Governments argue that similarly, a state court should not entertain a Section 1983 action, enabling Taxpayers to circumvent the statutory scheme set forth in the General County Assessment Law

**2.** Under Pa.R.A.P. 1311(b), a party may file a petition for permission to appeal to this Court when the trial court's interlocutory order contains the statement prescribed in 42 Pa.C.S. § 702(b). The trial court's Order satisfied this requirement by stating that "[t]his Order is deemed to involve a controlling question of law as to which there is a substantial ground for difference of opinion. An immediate appeal from the Order may materially advance the ultimate determination of this matter."

**3.** The Tax Injunction Act of 1937 provides that:
   The district courts shall not *enjoin, suspend or restrain* the assessment, levy or collection of *any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state.*
   28 U.S.C. § 1341. (Emphasis added.)

(GCAL)[4] and the Third Class County Assessment Law (TCCAL).[5]

Taxpayers do not disagree that federal courts have routinely refrained from interfering with the administration of state taxes, including the district court in *Sunderland Properties*, under the principles set forth in *Fair Assessment In Real Estate v. McNary*, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981). In *Fair Assessment*, the Supreme Court found that while the Tax Injunction Act only bars injunctive action, the principle of comity[6] bars actions for monetary damages as well. *Id.* 454 U.S. at 105, 102 S.Ct. at 180. By enacting the Tax Injunction Act, the Supreme Court stated that Congress recognized that the autonomy and fiscal stability of states survive best when their tax systems are not subject to scrutiny in federal courts. *Id.* at 102–103, 102 S.Ct. at 179. The court reasoned that allowing actions for monetary damages would be just as intrusive and disruptive to the states' revenue collection system as the actions for injunctive relief specifically barred under the Tax Injunction Act. *Id.* at 114–115, 102

**4.** Act of May 22, 1933, P.L. 853, *as amended*, 72 P.S. §§ 5020–101—5020–602.

**5.** Act of June 26, 1931, P.L. 1379, *as amended*, 72 P.S. §§ 5342—5350j.2. This act does not have an official name but is commonly referred to as the Third Class County Assessment Law.

**6.** The Supreme Court in *Fair Assessment* cited their decision in *Younger v. Harris*, 401 U.S. 37, 44–45, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1985), where they explained:

[That] the notion of 'comity,' ... is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways ... [T]he concept [represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, 'Our Federalism,' born in the early struggling days of our Union of States, occupies a highly important place in our Nation's history and its future.

*Fair Assessment*, 454 U.S. at 112, 102 S.Ct. at 184.

S.Ct. at 185. It then went on to state that "[s]uch taxpayers must seek protection of their federal rights by *state remedies*, provided, of course, that those remedies are *plain, adequate, and complete*, [footnote omitted][7] and may ultimately seek review of the state decisions in this court." *Id.* at 116, 102 S.Ct. at 186.[8] (Emphasis added.)

Taxpayers counter, however, that the defense of comity and the prohibitions contained in the Tax Injunction Act are not defenses that are applicable in state courts. Because comity is a doctrine based upon "the need for federal court restraint", "the fundamental principle of comity between federal courts and state courts" and the "respect that should be accorded state tax laws", as well as the "question of state law ... like other state regulatory issues are heard in state court," *Id.* at 103, 108, 109, 102 S.Ct. at 179, 182, 183, none of those concerns expressed in *Fair Assessment* and its progeny are applicable when a cause of action is brought in the state forum. They contend that state courts present no danger of federal court interference or misunderstanding, and the abstention based upon comity simply then is inapplicable. Moreover, Taxpayers contend that the Tax Injunction Act only applies by its very terms to preclude federal courts, not state courts, from enjoining state tax schemes.

Since *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), it has been settled that state courts have concurrent jurisdiction with federal courts to hear Section 1983 claims. Uncertainty, however, existed as to

7. The omitted footnote stated that the court discerned no significant difference between remedies which are "plain, adequate, and complete," as the phrase is used to articulate the doctrine of equitable constraint under comity, and those that are "plain, speedy and efficient," within the meaning of the Tax Injunction Act. *Fair Assessment*, 454 U.S. at 116 n. 8, 102 S.Ct. at 186 n. 8.

8. Justice Brennan, speaking for three other concurring justices, would have found that the taxpayer must exhaust the available administrative remedies prior to bringing a Section 1983 suit, stating that "the requirement of exhaustion of state administrative remedies was certainly a mandatory precondition to suit and, in a sense, a 'jurisdictional pre-requisite.'" *Fair Assessment*, 454 U.S. at 137, 102 S.Ct. at 196.

whether state courts were required to hear such claims or whether they could decline to do so when they perceived that to allow such a suit would be contrary to state law or interest. Overturning a Florida Court of Appeal's decision declining to exercise Section 1983 jurisdiction, the Supreme Court in *Howlett v. Rose*, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), in holding that there was no discretion by a state court to entertain such claims, the reverse of comity, discussed the method and enforcement of federal law in state courts.

The Court in *Howlett* explained that the "federal law is enforceable in state courts ... because the Constitution and laws passed pursuant to it are as much laws in the states as laws passed by the state legislature." *Id.* 110 S.Ct. at 2438. Expressing that state courts may not, except in rare circumstances, deny a federal right when the parties and controversy are properly before the state court, the Supreme Court found that the overriding federal interest requires that, "A state may not, by statute or common law, create a cause of action under Section 1983 ...", nor may a state lessen the availability of a Section 1983 action. *Id.* at 2439, 2442. The Supreme Court held that in actions brought in state courts seeking to enforce federal law, "the rights of, and the defenses to, a federal cause of action are defined by federal law." *Id.* at 2442.

The Supreme Court foreclosed the state courts from expanding or limiting the availability of a federal cause of action because Section 1983 advances federal, and not state rights and interests. By doing so, the Supreme Court, in effect, enunciated a principle that while state courts are required to entertain federal causes of actions, they should be guided by federal law to determine how federal rights are to be enforced,[9] thereby attempting to assure that the

9. Quoting from *Wilson v. Garcia*, 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985), the Supreme Court in *Howlett* stated: Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action. *Howlett,* 110 S.Ct. at 2444.

outcome of federal causes of actions would be the same, regardless if decided in a state or federal forum.

Other states have used this principle to determine whether a Section 1983 challenge to state administration of taxes can be maintained in state courts. In *Backus v. Chilivis*, 236 Ga. 500, 224 S.E.2d 370 (1976), the Georgia Supreme Court held that a Section 1983 claim is not available under the principles set forth under the Tax Injunction Act, stating that "[t]he overriding interests of the state in an efficient, expeditious and non-disruptive resolution of ad valorem [property] tax disputes would be severely impaired, if not destroyed, by allowance of such suits." *Id.* at 505, 224 S.E.2d at 374. Echoing this reasoning, and applying *Fair Assessment*, the Supreme Court of Missouri, in *Stufflebaum v. Panethiere*, 691 S.W.2d 271, 272 (Mo. en banc 1985), stated that "if Section 1983 could be invoked [in real estate tax cases], 'the obstruction to the collection of taxes would be so frequent as to be intolerable.'" (Citation omitted.)

Noting the absence of any language in *Fair Assessment*, indicating that state courts are required to entertain Section 1983 challenges to state taxation, the Supreme Court of North Dakota in *Linderkamp v. Bismark School District No. 1*, 397 N.W.2d 76, 79–80 (N.D.1986), found that the Tax Injunction Act recognizes "that state taxation embraces uniquely local concerns, and that the greatest possible deference [should] be paid to state remedial schemes." *Id.* at 79. It then went on to state that "deference to state remedial schemes leads to the conclusion that a state court § 1983 action ... is no less of a burden upon the state remedial scheme than would be a Section 1983 action in federal court." *Id.* *See also Spencer v. South Carolina Tax Commission*, 281 S.C. 492, 316 S.E.2d 386 (1984), *aff'd mem.*, 471 U.S. 82, 105 S.Ct. 1859, 85 L.Ed.2d 62 (1985); *Johnson v. Gaston County*, 71 N.C.App. 707, 323 S.E.2d 381, *appeal denied*, 313 N.C. 508, 329 S.E.2d 392 (1985); *Zizka v. Water Pollution Control Authority*, 195 Conn. 682, 490 A.2d 509 (1985); *Davis v. City of Elkhorn*, 132

Wis.2d 394, 393 N.W.2d 95 (1986); *Nutbrown v. Munn*, 311 Or. 328, 811 P.2d 131 (1990); *Hogan v. Musolf,* 163 Wis.2d 1, 471 N.W.2d 216 (1991); *L.L. Bean, Inc. v. Bracey*, 817 S.W.2d 292 (Tenn.1991).[10]

We join the consensus of other state courts that a Section 1983 challenge to state tax administration is not maintainable if state remedies afford the taxpayer an opportunity for full and adequate relief. Both Congress, by enacting the Anti–Tax Injunction Act, and the Supreme Court, by its holding in *Fair Assessment*, prohibiting or declining to exercise jurisdiction, have decided that federal interests are not advanced by allowing federal causes of action to intrude upon a carefully formulated state system designed to rectify state tax disputes. Since federal courts decline to exercise jurisdiction because federal intrusion in state tax schemes is unwarranted, state courts should also not interfere, because its enforcement of Section 1983 is no less intrusive or disruptive than if enforced by a federal court.[11]

**10.** Only two state courts have decided that a Section 1983 action can be maintained without requiring an exhaustion of state remedies. The Supreme Court of Mississippi in *Burrell v. Mississippi State Tax Commission,* 536 So.2d 848, 864 (1988), held that their state courts must hear taxpayers' actions brought pursuant to Section 1983, because they have concurrent jurisdiction with the federal courts, and the Supremacy Clause of the United States Constitution requires that state courts enforce the valid enactments of Congress, of which Section 1983 is one. However, the court never considered the exhaustion of remedies argument advanced by the concurrence in *Fair Assessment,* but simply looked at the principle of comity espoused by the majority, finding that it did not apply to state courts. *Id.*

The Superior Court of New Jersey in *Bung's Bar & Grille, Inc. v. Florence Township,* 206 N.J.Super. 432, 461–462, 502 A.2d 1198, 1215–1216 (1985), held that their courts must entertain these actions, since New Jersey law demands that all issues of a controversy be included at the same time in a lawsuit and the available administrative remedy did not allow for civil rights claims. However, this decision is not at odds with those of the majority of other states, since the decision actually turned on the fact that this joinder requirement deprived plaintiffs of a "plain, speedy and efficient remedy." *Id.* at 460, 502 A.2d at 1215.

**11.** Taxpayers also rely on the recent U.S. Supreme Court opinion in *Dennis v. Higgins,* —— U.S. ——, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). *Dennis* held that a taxpayer's claim brought in a Nebraska state court that a state tax discriminates against non-residents in violation of the

■ Because a Pennsylvania court has not addressed this issue, we must now determine whether the established administrative remedy provides Taxpayers with a "plain, adequate, and complete" remedy. The existing administrative procedures applicable to a taxpayer's appeal of a property assessment in Berks County can be found in the General County Assessment Law and the Third Class County Assessment Law.

The Third Class County Assessment Law creates a three-member Board of Assessment Appeals (Board) in each county which must cause annual assessment of property within its jurisdiction. Sections 1 and 3 of the TCCAL; 72 P.S. §§ 5342, 5344. Property owners subject to these assessments must be duly notified. Section 8(b) of the TCCAL; 72 P.S. § 5349(b). A property owner who is aggrieved by any assessment, whether or not the assessment has been changed from the previous year, has a right to appeal to the Board for relief. Section 8(c) of the TCCAL; 72 P.S. § 5349(c). When such an appeal has been filed, the Board must notify each person and each taxing district which has an interest and has the power to compel the attendance of witnesses and the furnishing of documents. Section 8(d) of the TCCAL; 72 P.S. § 5349(d).

Section 9 of the Third Class County Assessment Law further provides that the aggrieved property owner may appeal the final decision of the Board to the county court of common pleas. 72 P.S. § 5350. The court of common pleas

Commerce Clause is actionable under Section 1983. Taxpayers point to the language in the dissenting opinion which states: "[t]oday's decision raises far more questions about the proper conduct of challenges to the validity of state taxation than it answers." *Id.* at ——, 111 S.Ct. at 880. (Kennedy, J. dissenting.) The dissenting opinion, alluding to the Tax Injunction Act, and the court's opinion in *Fair Assessment* and the state supreme court cases of *Backus* and *Spencer*, stated that the questions regarding jurisdiction of the state courts over tax actions "now become of paramount importance, as we risk the destruction of state fiscal integrity in a manner which may require congressional correction." *Id.* Because the majority in *Dennis* never discusses whether the state court had subject matter jurisdiction or whether there was a full and complete remedy at state law, apparently because those issues were not raised and because of the unique procedural history of that case, it has no impact on our decision.

will proceed de novo. *Appeal of U.S. Steel Corporation,* 436 Pa. 435, 260 A.2d 779 (1970); *Valley Forge Golf Club, Inc. v. Board of Assessment and Revision of Taxes of Montgomery County,* 3 Pa.Commonwealth Ct. 644, 285 A.2d 213 (1971).

The General County Assessment Law also applies to Berks County, where it is not inconsistent with the Third Class County Assessment Act. Art. I, § 105 of the GCAL; 72 P.S. § 5020–105; *Truck Terminal Motels of America, Inc. v. Berks County Board of Assessment Appeals,* 127 Pa.Commonwealth Ct. 408, 561 A.2d 1305 (1989) *petition for allowance of appeal denied,* 525 Pa. 652, 581 A.2d 576 (1990). The General County Assessment Law provides that the Board in each county shall hear property owners' appeals of tax assessments. Art. V, § 511 of the GCAL; 72 P.S. § 5020–511. The decision of the Board can then be appealed to a court of common pleas for a de novo proceeding, with further appeals to the Superior and Supreme Courts. Art. V, §§ 518.1, 518.2, and 519 of the GCAL; 72 P.S. §§ 5020–518.1, 5020–518.2, 5020–519.

The federal courts in Pennsylvania have already addressed the issue of whether the General and Third Class County Assessment Laws provide a taxpayer a plain, adequate, and complete remedy.[12] In *Garrett v. Bamford,* 582 F.2d 810 (3rd Cir.1978), the United States Court of Appeals for the Third Circuit held that the district court properly abstained from entertaining a Section 1983 class action challenging alleged discriminatory property tax assessments brought by property owners in Berks County. The Third Circuit held that the class action was precluded in federal court under the Tax Injunction Act, since the Third Class County Assessment Law, affording administrative appeal with judicial review to a class, provided them with a plain, speedy and efficient remedy. *Id.* at 819.

**12.** The Pennsylvania courts are not bound by the decisions of the federal courts, except those of the United States Supreme Court. *See Department of Environmental Resources v. City of Harrisburg,* 133 Pa.Commonwealth Ct. 577, 578 A.2d 563 (1990); *Cianfrani v. Johns–Manville Corp.,* 334 Pa.Superior Ct. 1, 482 A.2d 1049 (1984).

The Third Circuit in *Garrett* went on to state that the property owner's allegation that the assessments were not uniform and violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution could be asserted under Article VIII, § 1 of the Pennsylvania Constitution [13] and addressed by the Board and by the court of common pleas at the de novo proceeding. The court, citing *Buhl Foundation v. Board of Property Assessment*, 407 Pa. 567, 570, 180 A.2d 900, 902 (1962), stated that it is the Board's and the Court of Common Pleas' duty to determine the value of the property, and between the standard of actual value and the standard of uniformity, uniformity must prevail. *Garrett*, 582 F.2d at 816. Therefore, the court reasoned, an action pursuant to Section 1983 would not afford the taxpayer any more relief than he would receive under Pennsylvania law. *Id.* at 817.

Moreover, as previously mentioned in a recent case involving the exact same allegations concerning the so-called "Welcome Stranger" policy in Berks County, the United States District Court for the Eastern District of Pennsylvania ruled that the principle of comity relied on by the majority in *Fair Assessment* barred the taxpayer's action in federal court. *Sunderland Properties, Inc. v. County of Berks*, 750 F.Supp. 704, 710. The court in *Sunderland* further stated that the principle of comity would bar the action only if the plaintiff was provided a "plain, adequate and complete" remedy under state law. *Id.* at 707.

In determining whether the plaintiff's remedy was plain, adequate and complete, the *Sunderland* court stated that:

> A plaintiff's state remedy is plain, speedy and efficient if it provides the taxpayer with a *full hearing and judicial determination at which the taxpayer may raise federal constitutional objections*. *Rosewell v. LaSalle National Bank*, 450 U.S. 503, 514 [101 S.Ct. 1221, 1229, 67

**13.** This Article of the Pennsylvania Constitution provides that:
All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.
Pa. Const. art. VII, § 1.

L.Ed.2d 464] (1981). ... The state remedy that will suffice need only be adequate, and need not be coextensive with the remedies in federal court. In other words, the state remedy that will meet the requirement of plain, speedy and efficient need not be the best or most convenient one.

*Id.* at 707. (Citations omitted.) (Emphasis added.)

The District Court found the remedy to be plain, adequate and complete, since the General County Assessment Law, specifically 42 P.S. § 5020–518.1, gave the court of common pleas broad powers to grant appropriate relief, which would include the consideration of constitutional issues. *Id.* at 708–710. The court found nothing in the procedures provided under the General and Third Class County Assessment Laws which would prevent plaintiffs from raising their constitutional issues. *Id.* at 708.

The consideration of constitutional issues by the Board and the Court of Common Pleas in tax assessment cases is also well recognized by the Pennsylvania courts. *See Borough of Greentree v. Board of Property Assessments,* 459 Pa. 268, 328 A.2d 819 (1974); *McKnight Shopping Center, Inc. v. Board of Property Assessment,* 417 Pa. 234, 209 A.2d 389 (1965); *Consolidated Gas Supply Corporation v. County of Clinton,* 80 Pa.Commonwealth Ct. 10, 470 A.2d 1113 (1984); *Concerned Taxpayers of Beaver County v. Beaver County Board of Assessment Appeals,* 75 Pa.Commonwealth Ct. 443, 462 A.2d 347 (1983).

Since Taxpayers may raise their constitutional contentions through an exhaustion of the existing administrative procedures, we also hold that the General and Third Class County Assessment Laws provide Taxpayers with a plain, adequate and complete remedy. The statutory procedures provide a full hearing before the Board, followed by a de novo judicial determination of the Board's decision by the court of common pleas. Taxpayers may properly raise their constitutional issues before the Board and before the trial court on appeal. Taxpayers present action circumvents the

established administrative procedures for reviewing a tax assessment and should be dismissed.[14]

Accordingly, we will reverse the order of the trial court and remand with instructions to dismiss the entire action for lack of subject matter jurisdiction.

## ORDER

AND NOW, this *9th* day of *January*, 1992, the order of the Berks County Court of Common Pleas dated January 23, 1991, is reversed and remanded with instructions to dismiss the entire action for lack of subject matter jurisdiction.

Jurisdiction relinquished.

SMITH, Judge, dissenting.

I disagree that the taxpayers present action should be dismissed for failure to exhaust administrative procedures. Since taxpayers claim Section 1983 violations as a result of the County and Board's practice, they need not exhaust administrative remedies to pursue their claims. *See Felder v. Casey*, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (exhaustion of administrative remedy not required where Section 1983 claim brought in state, as well as federal, forum). Also, *see Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), and this Court's holding in *City of Lancaster v. County of Lancaster*, 143 Pa.Commonwealth Ct. 476, 599 A.2d 289 (1991). Thus, the Court of Common Pleas of Berks County properly determined that it had subject matter jurisdiction in this case.

14. Due to our resolution of this case on this issue, we need not address Local Governments' contentions contained in their appeal at 625 C.D. 1991.